# EXHIBIT M

```
                                                              Page 1
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MICHIGAN
 2                    SOUTHERN DISTRICT
 3

    JAQUELINE SMITH,
 4
 5          Plaintiff,
 6
    vs.                        No. 2:20-cv-13470-PJD-MAR
 7
 8  CO/OP OPTICAL SERVICES, INC.,
    a Michigan corporation,
 9
10
            Defendant.
11
12  _____/
13
14          The deposition of JAMES NEBLETT, taken
15  before Suzanne M. McGovern, CSR 2655, Notary
16  Public for Oakland County, at 38505 Woodward
17  Avenue, Suite 2000, Bloomfield Hills, Michigan, on
18  Monday, January 24, 2010, at approximately 9:05
19  a.m.
20  APPEARANCES:
21            JESSE L. YOUNG, ESQ.
              SOMMERS SCHWARTZ, P.C.
22            2000 Town Center, Suite 900
              Southfield, Michigan 48075
23
24      Appearing on behalf of the Plaintiff
25
```

Page 38

1  help. Okay. You've never seen this document
2  either?
3      THE WITNESS: No.
4      MS. CAULEY: Okay. You also -- voir dire.
5  Did you have any involvement in the investigation
6  regarding any allegations surrounding the credit
7  card?
8      THE WITNESS: No.
9      MR. YOUNG: Hang on. Hang on. I'm not
10 done with my questions.
11     MS. CAULEY: I'm voir diring. I can voir
12 dire on the basis of a document.
13     MR. YOUNG: I have a question on the
14 table. Just hang on a second.
15     MS. CAULEY: I'm objecting to the question
16 and I'm voir diring to see if there's any basis
17 for this. You certainly aren't trying to put
18 together a foundation. I'm entitled to do that.
19     Do you know the basis for any of the
20 conclusions reached by anyone who investigated
21 this?
22     THE WITNESS: No.
23     MS. CAULEY: I would say he cannot answer.
24 There's no foundation possible for this.
25 Q. (MR. YOUNG) Are you surprised by anything

Page 39

1  contained in this letter?
2      MS. CAULEY: Lack of foundation.
3      THE WITNESS: No.
4  Q. (MR. YOUNG) Okay. Okay. Now, you can pull out
5     exhibit six -- I'm sorry. Exhibit seventy. Have
6     you ever seen this document before?
7      MS. CAULEY: What number is this?
8     Seventy-one?
9      MR. YOUNG: It's marked.
10     MS. CAULEY: Oh, I'm sorry. Thirty-two.
11     THE WITNESS: No. I haven't seen this.
12 Q. (MR. YOUNG) Okay. Do you know anything about the
13    administrative transition committee?
14 A. Yeah. I knew it existed.
15 Q. Okay. Do you know when the board of directors
16    appointed this committee?
17 A. I don't recall.
18 Q. Okay. I have no further questions.
19     EXAMINATION
20 BY MS. CAULEY:
21 Q. You testified, Mr. Neblett, that you had heard
22    some rumors about Miss Smith's use of the credit
23    card and about her car, something about her car.
24    Where did you hear those rumors?
25 A. At a board meeting.

Page 40

1  Q. You never heard them outside of board meetings?
2  A. No.
3  Q. Do you believe -- do you have a belief, based on
4     your knowledge of the FMLA, that it's against the
5     law to terminate someone while they're on FMLA?
6  A. No.
7  Q. No, you don't have a belief or no, it isn't?
8  A. No, it's not.
9  Q. Okay.
10 A. Nor do I have a belief that it is.
11 Q. Okay. Did Mr. Garrett indicate to you that
12    regarding the March 19th meeting where he was in
13    Washington, that he simply wouldn't be able to
14    attend whether he knew what was going on or not?
15 A. He had a meeting in Washington. That's what he
16    indicated to me, that it was an international
17    board meeting and he had to be there.
18 Q. Okay. Did the board ever require Miss Smith to
19    attend board meetings while she was on her
20    leave?
21 A. Not that I'm aware of.
22 Q. Okay. In your position on the board did you ever
23    learn of any facts that would lead to a conclusion
24    or even suggest that Miss Smith was fired because
25    she took an FMLA leave?

Page 41

1  A. No.
2  Q. In your position on the board did you ever learn
3     of any facts that would lead to a conclusion that
4     she was terminated because she was a female?
5  A. No.
6  Q. That's all. Thank you.
7      RE-EXAMINATION
8  BY MR. YOUNG:
9  Q. I just have a couple follow-ups, Mr. Neblett. Is
10    there animosity between the board members at Co/op
11    Optical?
12     MS. CAULEY: Objection, lack of foundation
13    and also the phrase, the term animosity, but
14    answer it as best you can.
15     THE WITNESS: Which board members are you
16    speaking of?
17 Q. (MR. YOUNG) I'm talking about the board in
18    general.
19 A. Okay. Is there animosity?
20 Q. Uh-huh.
21 A. No.
22 Q. Was there disagreement with respect to Jackee and
23    her performance as CEO?
24 A. Oh, absolutely.
25 Q. Okay. Did you ever know any board members to